**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In Re: | ) |
| | ) |
| Dannie L. Bennett, Jr aka Dannie Lee Benett, Jr aka Dan | ) |
| Bennett, Jr. and Maria J. Bennett aka Maria DeJesus Bennett | ) |
| aka Maria Jesus Bennett, *Debtor* | ) |
| | ) |
| BMO Bank N.A., *Creditor* | ) |
| | ) |
| vs. | ) |
| | ) |
| Dannie L. Bennett, Jr aka Dannie Lee Benett, Jr aka Dan | ) |
| Bennett, Jr. and Maria J. Bennett aka Maria DeJesus Bennett | ) |
| aka Maria Jesus Bennett, *Debtor* | ) |
| | ) |
| and | ) |
| | ) |
| Erin M. McCartney, *Trustee* | ) |

Case No. 23-80623-bsk

Chapter: 13

<u>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**</u>

COMES NOW, BMO Bank N.A., its subsidiaries, affiliates, predecessors in interests, successors

or assigns, ("Creditor"), and in support of its motion, states as follows:

1.      Creditor files this motion under Rules 4001 and 9014, Rules of Bankruptcy Procedure.  On

August 11, 2023, the Debtor filed a Petition for Adjustment of Debts under Chapter 13 of the Bankruptcy

Code wherein Creditor was listed as a secured creditor as to real property of the Debtor.

2.      Jurisdiction is invoked in the District Court under 28 U.S.C. §1334(a) and jurisdiction is

proper in this Court pursuant to 28 U.S.C. §1408(1) and §157(b)(2)(G).

3.      Dannie L. Bennett, Jr and Maria J. Bennett ("Debtor", whether one or more) reside at 13411

Lochmoor Cir, Bellevue, NE 68123.

4.      Erin M. McCartney is the Trustee duly appointed by law ("Trustee").

5.      On July 1, 2014, the Debtors executed a promissory note (the "Note") in the principal sum

of $10,500.00.   A copy of the Note is attached as Exhibit "A".

6.      Contemporaneously with the execution of the Note, a Deed of Trust was executed to secure

repayment of the Note.  The Deed of Trust was filed for record with the Office of the Register of Deeds of

Sarpy County, NE, on July 11, 2014, Document No. 2014-14862. A copy of the Deed of Trust is attached

as Exhibit "B". The Property is legally described as follows:

**LOT 78, TREGARON, A SUBDIVISION, AS SURVEYED, PLATTED AND RECORDED
IN SARPY COUNTY, NEBRASKA.**, commonly known as 13411 Lochmoor Cir, Bellevue, NE
68123 (the "Property")

7.        Creditor is the holder of the note secured by the security instrument and lien in the real

property through its agent/custodian.

8.        The Debtor has claimed the Property as exempt under 11 U.S.C. §522.

9.        The total debt due on this loan as of March 4, 2024 is $12,127.07, an exact payoff is

available upon request of an appropriate party.

10.        The Plan provides that the pre-petition arrearage due on the Note would be paid to the

Trustee and Debtor would pay the post-petition payments directly to Creditor.

11.        The Debtor has failed to pay the post-petition payments due on the promissory note held

by the Creditor.   The following amounts are now due and owing:

| DESCRIPTION | AMOUNT |
| --- | --- |
| (5) payments at $100.00 (10/15/23-02/15/24) | $500.00 |
| MFR Attorney Fees | $1,050.00 |
| MFR Filing Fee | $199.00 |
| Total | $1,749.00 |

12.        These amounts due and owing are in addition to any amounts that have come due after the

filing of this Motion pursuant to the terms of the Promissory Note and Security Instrument.

13.        The Debtor has failed to cure the delinquency and the estate lacks sufficient assets from

which the delinquency can be cured.   Creditor's interest in the real property lacks adequate protection.

14.        The Debtor has materially defaulted with respect to payment of Creditor's secured claim

and has caused unreasonable delay, which is prejudicial to this creditor.

15.        To remedy this prejudicial delay to creditor, an Order for Relief from the Automatic Stay

should be granted that is effective immediately without a stay of enforcement pursuant to Federal Rule of

Bankruptcy Procedure 4001(a)(3).

16.     Creditor seeks relief for the purpose of exercising its remedies available under state law, up to and including foreclosure of its mortgage against Debtor(s) interest in the Property. Creditor further seeks relief in order to contact Debtor(s), at its option, by telephone or by written correspondence, to offer, provide and enter into a forbearance agreement, deed in lieu of foreclosure, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

17.     Creditor specifically requests permission from this Honorable Court to communicate with the Debtor(s) and Debtor(s)' counsel to the extent necessary to comply with applicable nonbankruptcy law.

18.     Creditor requests that any order granting it relief from the automatic stay contain a provision that the order shall survive any conversion of this case to a Chapter 7 proceeding.

**WHEREFORE**, Creditor, its successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. §362 to enforce its lien granted in the Deed of Trust, and for such other and further relief, as the Court deems proper.

SOUTHLAW, P.C.

*/s/ Hunter C. Gould*
_____

Steven L. Crouch (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311)
Daniel A. West (MBE#48812; EDMO #98415; KSfd#70587)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
10855 W. Dodge Rd., Suite 230
Omaha, NE 68154
(913) 663-7600
(913) 663-7899 Fax
nebkecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was filed electronically on this March 7, 2024 with the United States Bankruptcy Court for the District of Nebraska at Omaha, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court.

Joel G Lonowski
Morrow Poppe Law Offices
201 N 8th St., Ste 300
Lincoln, NE 68501-3439
**ATTORNEY FOR DEBTOR**

Erin M. McCartney
13930 Gold Cir STE 201
Omaha, NE 68144-2304
**TRUSTEE**

Jerry Jensen
111 S 18th Plz STE 1148
US Trustees Office
Omaha, NE 68102-1321
**U.S. TRUSTEE**

And delivered via U.S. Mail, First Class, postage prepaid, on March 7, 2024, to:

Dannie L. Bennett, Jr
Maria J. Bennett
13411 Lochmoor Cir
Bellevue, NE 68123
**DEBTOR**

SOUTHLAW, P.C.

*/s/ Hunter C. Gould*
_____
Steven L. Crouch (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311)
Daniel A. West (MBE#48812; EDMO #98415; KSfd#70587)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
10855 W. Dodge Rd., Suite 230
Omaha, NE 68154
(913) 663-7600
(913) 663-7899 Fax
nebkecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 242280
Case No: 23-80623-bsk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Dannie L. Bennett, Jr aka Dannie Lee Benett, Jr aka Dan | ) | |
| Bennett, Jr. and Maria J. Bennett aka Maria DeJesus Bennett | ) | Case No. 23-80623-bsk |
| aka Maria Jesus Bennett, *Debtor* | ) | |
| | ) | Chapter: 13 |
| BMO Bank N.A., *Creditor* | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Dannie L. Bennett, Jr aka Dannie Lee Benett, Jr aka Dan | ) | |
| Bennett, Jr. and Maria J. Bennett aka Maria DeJesus Bennett | ) | |
| aka Maria Jesus Bennett, *Debtor* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Erin M. McCartney, *Trustee* | | |

<u>SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE</u>

The following Exhibits referenced in the Attached Pleading filed on behalf of BMO Bank N.A are attached electronically.

1. Exhibit A, the Nebraska Gold Equity Choice Credit Agreement and Disclosure for the Property that is the subject of the Pleading

2. Exhibit B, the Deed of Trust for the Property that is the subject of the Pleading.


SOUTHLAW, P.C.

*/s/ Hunter C. Gould*
_____
Steven L. Crouch (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311)
Daniel A. West (MBE#48812; EDMO #98415; KSfd#70587)
Hunter C. Gould (MBE #65355; #KSfd #78608; KS#29961)
10855 W. Dodge Rd., Suite 230
Omaha, NE 68154
(913) 663-7600
(913) 663-7899 Fax
nebkecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 242280
Case No: 23-80623-bsk

## CERTIFICATE OF MAILING/SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was filed electronically on this March 7, 2024 with the United States Bankruptcy Court for the District of Nebraska at Omaha, and shall be served on the parties in interest via email by the Court pursuant to CM/ECF as set out on the Notice of Electronic Filing as issued by the Court.

Joel G Lonowski
Morrow Poppe Law Offices
201 N 8th St., Ste 300
Lincoln, NE 68501-3439
**ATTORNEY FOR DEBTOR**

Erin M. McCartney
13930 Gold Cir STE 201
Omaha, NE 68144-2304
**TRUSTEE**

Jerry Jensen
111 S 18th Plz STE 1148
US Trustees Office
Omaha, NE 68102-1321
**U.S. TRUSTEE**

And delivered via U.S. Mail, First Class, postage prepaid, on March 7, 2024, to:

Dannie L. Bennett, Jr
Maria J. Bennett
13411 Lochmoor Cir
Bellevue, NE 68123
**DEBTOR**

SOUTHLAW, P.C.

 /s/ Hunter C. Gould
_____
Steven L. Crouch (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311)
Daniel A. West (MBE#48812; EDMO #98415; KSfd#70587)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
10855 W. Dodge Rd., Suite 230
Omaha, NE 68154
(913) 663-7600
(913) 663-7899 Fax
nebkecf@southlaw.com
**ATTORNEYS FOR CREDITOR**

File No. 242280
Case No: 23-80623-bsk

**NAME:** Dannie L. Bennett, Jr, and Maria J. Bennett

**CLIENT:** Dovenmuehle Mortgage Co.

**ACCT NO:** XXXXXX4770

**CASE NO:** 23-80623-bsk

**DATE FILED:** 8/11/2023

**FILE NO:** 242280

| TRANS DATE | APPLIED TO | DESCRIPTION | AMOUNT RECEIVED | AMOUNT DUE | APPLIED TO PRINCIPAL | APPLIED TO INTEREST | AMOUNT UNAPPLIED | SUSPENSE BALANCE |
|---|---|---|---|---|---|---|---|---|
| 08/11/23 | | BK filed | | | | | $    - | $    - |
| 08/31/23 | 08/15/23 | | $   800.00 | $    - | $   187.12 | $   612.88 | - | - |
| 09/15/23 | 09/15/23 | | $   100.00 | $    - | $   15.41 | $   84.59 | - | - |
| DUE | 10/15/23 | | $    - | $   100.00 | $    - | $    - | 100.00 | 100.00 |
| DUE | 11/15/23 | | $    - | $   100.00 | $    - | $    - | 100.00 | 200.00 |
| DUE | 12/15/23 | | $    - | $   100.00 | $    - | $    - | 100.00 | 300.00 |
| DUE | 01/15/24 | | $    - | $   100.00 | $    - | $    - | 100.00 | 400.00 |
| DUE | 02/15/24 | | $    - | $   100.00 | $    - | $    - | 100.00 | 500.00 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $10,500.00 | 07-01-2014 | 07-07-2039 | ▮ | 32 | ▮ | *** | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE 68123

**Lender:**  BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE  68123-4082
(402) 918-2341

**CREDIT LIMIT: $10,500.00**                                   **DATE OF AGREEMENT: July 1, 2014**

**Introduction.** This NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through BANK OF THE WEST. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean BANK OF THE WEST. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay BANK OF THE WEST, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until July 7, 2039 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on July 7, 2014 (the "Effective Disbursement Date") and will continue as follows: 10 years from the date of account opening. You may obtain credit advances during this period ("Draw Period"). After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: from 12 to 240 months from the end of the draw period. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued **FINANCE CHARGES** or $100.00, whichever is greater ("First Payment Stream"). You will make 120 of these payments. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment. The Minimum Payment during the First Payment Stream may not reduce the principal that is outstanding on your Credit Line.

After completion of the First Payment Stream, your "Regular Payment" will be based on your outstanding balance as shown below or $100.00, whichever is greater ("Second Payment Stream"). Your payments will be due monthly.

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| $9,999.99 and Under | 120 | 120 payments |
| $10,000.00 - $49,999.99 | 180 | 180 payments |
| $50,000.00 and Above | 240 | 240 payments |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the **ANNUAL PERCENTAGE RATE** can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your payment may be increased by the amount necessary to repay the balance by the end of this payment stream. Each time the **ANNUAL PERCENTAGE RATE** changes, we will review the effect the change has on your Credit Line Account to see if your payment is sufficient to pay the balance by the Maturity Date. If it is not, your payment will be increased by an amount necessary to repay the balance by the Maturity Date.

In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to interest, unpaid principal, other charges then late charges.

**Receipt of Payments.** All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement. If a payment is made consistent with our payment instructions but received after 5:00 P.M. Central Time on a business day, we will apply your payment to your Credit Line on the next business day.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Ten Thousand Five Hundred & 00/100 Dollars ($10,500.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If

Exhibit A

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

Loan No: [redacted]                                 (Continued)                                         **Page 2**

you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, **you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Check.

**Post-dated Checks.** Your Check is post-dated. If a post-dated Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Check.

**Transaction Violation.** Your Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Check.

**Other Restriction.** Credit Line Checks may not be used to make payments on the Equity Choice Account.

If we pay any Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Check. The Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Checks along with your periodic billing statements; however, your use of each Check will be reflected on your periodic statement as a credit advance. We do not "certify" Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction requirements will apply to the use of your Credit Line:

**Credit Line Check, Telephone Request and In Person Request Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Checks, requesting an advance by telephone and requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Check must be written for at least the minimum advance amount.

**Other Transaction Requirements.** Credit Line Checks may not be used to make payments on the Equity Choice Account.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Checks.** If you lose your Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (402) 918-2341. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated July 1, 2014, to a trustee in favor of us on real property located in SARPY County, State of Nebraska.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, **FINANCE CHARGES**, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a **FINANCE CHARGE** on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily **FINANCE CHARGE** will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

Loan No: [REDACTED]                                      (Continued)                                      Page 3

get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid **FINANCE CHARGES**. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your **FINANCE CHARGE** calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index which is the PRIME RATE AS PUBLISHED IN THE WESTERN EDITION OF THE WALL STREET JOURNAL (the "Index"). We will use the most recent Index value available to us as of the last business day of each month to determine whether the next billing cycle is subject to any **ANNUAL PERCENTAGE RATE** adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect monthly. In no event will the Periodic Rate result in a corresponding **ANNUAL PERCENTAGE RATE** that is less than 3.000% or more than 18.000%, nor will the Periodic Rate or corresponding **ANNUAL PERCENTAGE RATE** exceed the maximum rate allowed by applicable law. Today the Index is 3.250% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 1.500% | 4.750% | 0.01301% |

**Current Rates for the Second Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 3.000% | 6.250% | 0.01712% |

**Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.**

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $75.00 will be charged to your Credit Line at the following time: During your 13th billing cycle and every 12th billing cycle thereafter during the Draw Period. There is no annual fee for the first year.

**Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $8.00 when you request a stop payment on your account.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account the current rate in effect for providing copies of documents for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Late Charge.** Your payment will be late if it is not received by us within **10 days after the "Payment Due Date"** shown on your periodic statement. If your payment is late we may charge you 5.000% of the payment or $25.00, whichever is less.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all governmental fees for release of our security interests in collateral securing your Credit Line. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is **$45.00.**

**Other Charges.** Your Credit Line Account may be charged the following other charges: Demand Statement Fee. The amount of this other charge is: $30.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

Loan No: ████████                    **(Continued)**                    **Page 4**

and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. Except to the extent that our obtaining your agreement to do so is prohibited by applicable law and or our enforcing such agreement may be limited by applicable law, you will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Checks and any other access devices. Any use of Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BANK OF THE WEST, TWIN CREEK, 4009 TWIN CREEK DRIVE, BELLEVUE, NE 68123-4082.**

**Limitation.** All agreements between you and us with respect to your Credit Line Account are expressly limited so that in no contingency or event whatsoever shall the interest contracted for, charged or received by us exceed the maximum amount permissible under applicable law. If we ever receive interest in an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under this Agreement or refunded to you. The terms and provisions of this paragraph shall control and supersede any and every other conflicting provision of all agreements between you and us with respect to your Credit Line Account.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: CONSUMER PRODUCT SERVICING BANK OF THE WEST P.O. BOX 5168 SAN RAMON, CA 94583-5168.

**AUTOMATIC PAYMENT DEDUCTION.** If you have authorized the Bank to automatically debit your minimum payment from your Bank of the

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

Loan No: ▓▓▓▓▓▓                          **(Continued)**                          **Page 5**

West deposit account, the margin stated above as the Margin Added to index has been reduced by 0.25% from the margin that would otherwise have been stated. If you have not authorized such deduction in the connection with this agreement, but later Authorize such deductions, the Bank will reduce your margin by the same amount. In either case, if after having authorized the deduction, you later revoke such authorization, close your deposit account, or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account of any reason, the margin used to calculate your Daily Periodic Rate will increase by 0.25% . This increase will generally result in an increase in the amount of your minimum payment.

**LENDER'S RIGHTS ADDITIONAL PROVISION.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect: "As a result of government action, the value of our security interest no longer equals or exceeds your Credit Limit".

**FIXED RATE LOAN OPTION REQUEST.** This Agreement contains an option to convert the interest rate from a variable rate with interest limits to fixed rate as calculated below.  How the Fixed Rate Loan Option Works. Prior to the end of the Draw Period of your Account, you may use the Fixed Rate Loan  Option feature to establish up to three (3) Fixed Rate Loan Option within your Account. A Fixed Rate Loan Option will have a fixed rate of interest and repayment term, and may be for any amount from $5,000.00 up to the Available Credit on the Account. If the amount is $5,000.00 to $9,999.99 you may choose a repayment term from 12 to 120 months. If the loan amount is $10,000.00 to $19,999.99 you may choose a repayment term from 12 to 180 months. If the loan amount is $20,000.00 or more, you may choose a repayment term from 12 to 240 months. The maximum repayment term may be affected by a required minimum regular payment of $100.00. The amount of the payment will be the amount of principal and interest sufficient to amortize the Fixed Rate Loan Option over the repayment term selected by you at the time the Fixed Rate Loan Option is exercised. You will be told the minimum payment and due date when you exercise the Option. THIS MINIMUM PAYMENT WILL BE IN ADDITION TO THE MONTHLY PAYMENT DUE ON THE VARIABLE RATE LOAN PORTION. You may exercise a Fixed Rate Loan Option in person at any of our Banking Offices or by phone. However should you request a Fixed Rate Loan Option by phone, you agree to sign and return any written confirmation documents that we send you.

**Conditions For Exercising Fixed Rate Loan Option.** (a) No default exists under the Account; and (b) you cannot establish more than three (3) Fixed RateLoan Option Loans during any 12 month period, nor can you have more than three (3) Fixed Rate Loan Option Loans open at the same time. You may not use a Fixed Rate Loan Option to pay off an existing Fixed Rate Loan Option.

**Effect of Fixed Rate Loan Option on Credit Limit..** The Credit Limit specified above is the overall credit limit on the Account. If you exercise a Fixed Rate Loan Option, your Account will consist of a Variable Rate Portion and one or more Fixed Rate Portions. The available credit on the Account is reduced by the amount of any Fixed Rate Loan Option (s). Any principal reduction paid on the Fixed Rate Loan Option or Variable Rate Line of Credit Portion will increase the available credit by an equal amount during the Draw Period.

**Fixed Rate Loan Option Fee-FINANCE CHARGE.** For each Fixed Rate Loan Option exercised, you will be charged a fee of $100.00. The fee will be charged to your Account.

**Periodic FINANCES CHARGES  on Fixed Rate Loan Option.** The ANNUAL PERCENTAGE RATE and Daily Periodic Rate for a Fixed Rate Loan Option will be determined at the time the Fixed Rate Loan Option is exercised depending upon the amount and repayment term. The Annual Percentage Rate for a Fixed Rate Loan Option may be higher than a Variable Rate Portion. We will add a margin to the then current Fixed Rate Loan Index. The Fixed Rate Loan index is the previous month's Prime Rate as published in the Wall Street Journal Western Edition on the last business day of each month. This is the same index used for the Variable Rate Line Portion of the Account. The current Fixed Rate Index is 3.25%. The margin used to calculate the Annual Percentage Rate for Fixed Rate Loan Option will be: 6.50% (Current Rate 9.75%). However, we may but are not under any obligation or requirement to make lower Fixed Rate Loan Option rates available from time to time. Please contact the Convenience Banking Team at 1-877-699-7943 for the Fixed Rate Loan Option rate currently offered. If you have chosen to have the payment on your Equity Choice Line automatically deducted from your deposit account with us, the margin stated above will reduced by 0.25%. If after having authorized the deduction, you later revoke such authorization, close your deposit account, or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account for any reason, the margin stated above will be increased by 0.25%. This increase will generally result in an increase in the amount of your final payment. The ANNUAL PERCENTAGE RATE and Daily Periodic Rate will be disclosed to you on your monthly periodic billing statement.

**Payment on Fixed Rate Loan Option.** You may make monthly payments on any Fixed Rate Loan Option by using an automatic payment deduction from your deposit account with us, or by using the periodic billing statement coupon.

**REPAYMENT PERIOD/DETERMINING THE SECOND PAYMENT STREAM. Notwithstanding any terms in this Agreement to the contrary, the following provisions apply to establish the Second Payment Stream to be effective during the Repayment Period:.**

**How the Repayment Period Works.** After the Draw Period, the Repayment Period will begin. You will no longer be able to obtain credit advances. Your Regular Payments will be based on the amortization of any balance due on the variable rate portion of your Account at the expiration of the Draw Period. The amortization will be based on a fixed rate of interest and repayment term. The length of the repayment period is disclosed on the front page of this Agreement. The minimum payment will be $100.00. THIS MINIMUM PAYMENT WILL BE IN ADDITION TO THE REGULAR PAYMENT DUE ON ANY FIXED RATE LOAN OPTION IN PLACE AT THAT TIME.

**Periodic FINANCE CHARGES.** During the Repayment Period, the Annual Percentage Rate and Daily Periodic Rate will be fixed at a level that will be based, in part, on the value of an index on the last business day of the calendar month before the Repayment Period begins. The index is the previous month's Prime Rate as published in the Wall Street Journal western edition on the last business day of each month. To determine the Annual Percentage Rate that will apply to your account during the repayment period, we will add a margin to the then current value of the index. The current Fixed Rate Index is 3.25%, The margin used to calculate the Annual Percentage Rate during the Repayment Period will be: 3.00% (Current Rate 6.25%). If you have chosen to have the payment on your Equity Choice Line automatically deducted from your deposit account with us, the margin stated above will be reduced by 0.25%. If after having authorized the deduction, you later revoke such authorization, close your deposit account or fail to maintain a sufficient balance in your account to make your minimum payments, or if the Bank closes your deposit account for any reason, the margin stated above will increase by 0.25%. This increase will generally result in an increase in the amount of your final payment.The ANNUAL PERCENTAGE RATE and Daily Rate will be disclosed to you on your monthly periodic billing statement.

**Establishing Property Value When the Draw Period Ends.** The size of the margin added to the Fixed Rate Index to determine the Annual Percentage Rate during the Repayment Period is base, in part, on the value of your property as established when the account is first opened. If you wish us to obtain a new appraisal immediately prior to the beginning of the Repayment Period, to determine whether a lower margin can be used to set the Repayment Period Annual Percentage Rate, you will have the option to do so. You will have to pay the costs for the appraisal in effect at that time.

**SUBORDINATION FEE.** If the Bank chooses to subordinate its lien position on the Gold Equity Choice Line of Credit Product, a $200.00 Subordination Fee will be charged.

**Delay in Funds Availability.** While all conforming payments made to your Credit Line Account will be applied promptly and in accordance with the terms set forth above, during the Draw Period we may delay  your ability to draw credit advances against uncollected funds if we consider it necessary to verify the source and or availability of the payment received.

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

| Loan No: ▮▮▮▮▮▮▮ | (Continued) | Page 6 |

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Nebraska without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Nebraska.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

BORROWER:

X _____
DANNIE L BENNETT, JR

ACCEPTED: BANK OF THE WEST

By: _____
(Authorized Signer)

## NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE

Loan No:▮▮▮▮▮▮▮                                  (Continued)                                  Page 7

---

# BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from us no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

       Your name and account number.

       The dollar amount of the suspected error.

       Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

LASER PRO Lending, Ver. 14.2.0.021  Copr. O+H USA Corporation 1997, 2014.  All Rights Reserved.  - NE  P:\CFN.PL\D25.FC  TR-6390196  PR-131

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $10,500.00 | 07-01-2014 | 07-07-2039 | | 32 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE  68123

**Lender:**  BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE  68123-4082
(402) 918-2341

**LOAN TYPE.** This is a Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $10,500.00.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ Personal, Family, or Household Purposes or Personal Investment.

☐ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: FUTURE USE.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and DANNIE L BENNETT, JR am not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, I agree to perform and comply with the Real Estate Documents just as if I have signed as a direct and original party to the Real Estate Documents. This means I agree to all the representations and warranties made in the Real Estate Documents. In addition, I agree to perform and comply strictly with all the terms, obligations and covenants to be performed by either me or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell me about any action or inaction Lender takes in connection with the Real Estate Documents. I assume the responsibility for being and keeping informed about the property. I also waive any defenses that may arise because of any action or inaction of Lender, including without limitation any failure by Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** I understand that no loan proceeds will be disbursed until any notice of the right to cancel time period specified has expired and all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $10,500.00 as follows:

| | |
|---|---|
| **Undisbursed Funds:** | $10,500.00 |
| **Credit Limit:** | $10,500.00 |

**LIEN RELEASE FEES.** In addition to all other charges, I agree, to the extent not prohibited by law, to pay all governmental fees for release of Lender's security interests in collateral securing this loan. I will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $45.00

**AUTOMATIC PAYMENTS.** I hereby authorize Lender automatically to deduct from my ▮▮▮▮ account, numbered ▮▮▮▮ the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, I or Lender may voluntarily terminate Automatic Payments.

**TAX CONSEQUENCES.** I understand that Lender makes no representation or warranty whatsoever concerning the tax consequences of this loan, including the deductibility of interest, and that I should consult with my own tax advisor for guidance on this subject. I also agree that Lender shall not be liable in any manner whatsoever should the interest paid on the loan not be deductible.

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED JULY 1, 2014.

**BORROWER:**

X _____
DANNIE L BENNETT, JR

## DISBURSEMENT REQUEST AND AUTHORIZATION
### (Continued)

| Loan No: ████████ | | Page 2 |
|---|---|---|

### DEBT CANCELLATION DISCLOSURE

**VOLUNTARY DEBT CANCELLATION.  LOSS OF LIFE, DISABILITY AND JOB LOSS ARE NOT REQUIRED TO OBTAIN CREDIT.**

By signing below, I acknowledge that I am not obtaining Debt Cancellation for this loan for one of the following reasons:
   (A)  I am not eligible for Debt Cancellation;
   (B)  Debt Cancellation is not available from Lender; or
   (C)  If I am eligible and Debt Cancellation is available from Lender, I do not want it.

Prior to signing this Debt Cancellation Notice on July 1, 2014, I read and understood all of the provisions of this Disclosure.


**BORROWER:**

X _____
   DANNIE L BENNETT, JR

LASER PRO Lending, Ver. 14.2.0.021  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - NE  P:\CFNLPL\I20 FC  TR-6390198  PR-131

## AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $10,500.00 | 07-01-2014 | 07-07-2039 | | 32 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE  68123

**Lender:**  BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE  68123-4082
(402) 918-2341

**Grantor:**  DANNIE L BENNETT, JR
MARIA J BENNETT
13411 LOCHMOOR CIR
BELLEVUE, NE  68123

---

**INSURANCE REQUIREMENTS.** We, DANNIE L BENNETT, JR; and MARIA J BENNETT ("Grantor"), understand that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to DANNIE L BENNETT, JR ("Borrower") by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

**Collateral:**  13411 LOCHMOOR CIR, BELLEVUE, NE  68123.
**Type:** Fire and extended coverage.
**Amount:** Full Insurable Value.
**Basis:** Replacement value.
**Endorsements:** Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 10 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
**Comments:** IF FLOOD INSURANCE IS REQUIRED, PLEASE SEND TO: BANK OF THE WEST, CPS INSURANCE SERVICING DEPARTMENT, P.O. BOX 513, AMELIA, OH 45102.
**Latest Delivery Date:** By the loan closing date.

**INSURANCE COMPANY.** We may obtain insurance from any insurance company we may choose that is reasonably acceptable to Lender. We understand that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

**Real Estate at 13411 LOCHMOOR CIR, BELLEVUE, NE  68123.**
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. We agree to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of Borrower's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program or from private insurers.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

BANK OF THE WEST
C\O Insurance Department
P.O. BOX 5169
SAN RAMON, CA  94583

**FAILURE TO PROVIDE INSURANCE.** We agree to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of July 1, 2014, or earlier. We acknowledge and agree that if we fail to provide any required insurance or fail to continue such insurance in force, Lender may do so at our expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. WE ACKNOWLEDGE THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL; HOWEVER, OUR EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, we authorize Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

**WE ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JULY 1, 2014.**

**GRANTOR:**

X _____
DANNIE L BENNETT, JR

X _____
MARIA J BENNETT

**Loan No:** ▮▮▮▮▮

## AGREEMENT TO PROVIDE INSURANCE
## (Continued)

**Page 2**

FOR LENDER USE ONLY
INSURANCE VERIFICATION

DATE: _____                          PHONE _____

_____

AGENT'S NAME: _____

AGENCY: _____

ADDRESS: _____

INSURANCE COMPANY: _____

POLICY NUMBER: _____

EFFECTIVE DATES: _____

_____

COMMENTS: _____

_____

LASER PRO Lending, Ver. 14.2.0.021  Copr. D+H USA Corporation 1997, 2014   All Rights Reserved.   - NE  P:\CFI\LPL\I10.FC  TR-6230198  PR-131

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $10,500.00 | 07-01-2014 | 07-07-2039 | ▓▓▓▓ | 32 | ▓▓▓▓ | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  DANNIE L BENNETT, JR
                13411 LOCHMOOR CIR
                BELLEVUE, NE  68123

**Lender:**  BANK OF THE WEST
              TWIN CREEK
              4009 TWIN CREEK DRIVE
              BELLEVUE, NE  68123-4082
              (402) 918-2341

---

**NOTICE - WRITTEN AGREEMENTS.**  A credit agreement must be in writing to be enforceable under Nebraska law.  To protect Borrower and Lender from any misunderstandings or disappointments, any contract, promise, undertaking or offer to forbear repayment of money or to make any other financial accommodation in connection with this loan of money or grant or extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit must be in writing to be effective.

By signing this document each Party represents and agrees that:  (a) The written Loan Agreement represents the final agreement between the Parties,  (b) There are no unwritten oral agreements between the Parties, and  (c) The written Loan Agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the Parties.

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $10,500.00.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

NEBRASKA GOLD EQUITY CHOICE CREDIT AGREEMENT AND DISCLOSURE
AFFILIATED BUSINESS - AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE
Disbursement Request and Authorization
Notice of Final Agreement
Notice of Right to Cancel:  DANNIE L BENNETT, JR
Model Privacy Notice:  MARIA J BENNETT

NE Deed of Trust for Real Property located at 13411 LOCHMOOR CIR, BELLEVUE, NE  68123
Agreement to Provide Insurance:  Real Property located at 13411 LOCHMOOR CIR, BELLEVUE, NE  68123; owned by BENNETT, JR and BENNETT
Notice of Right to Cancel:  MARIA J BENNETT
Optional Loan/Line Dates
Model Privacy Notice: DANNIE L BENNETT, JR

**Parties.**  The term "Parties" means BANK OF THE WEST and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:    DANNIE L BENNETT, JR
Grantor(s):  DANNIE L BENNETT, JR; and MARIA J BENNETT

---

Each Party who signs below, other than BANK OF THE WEST, acknowledges, represents, and warrants to BANK OF THE WEST that it has received, read and understood this Notice of Final Agreement. This Notice is dated July 1, 2014.

**BORROWER:**

X _____
DANNIE L BENNETT, JR

**GRANTOR:**

X _____
DANNIE L BENNETT, JR

X _____
MARIA J BENNETT

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: ███████                                                      **Page 2**

LENDER:

BANK OF THE WEST

X _____
Authorized Signer

LASER PRO Lending, Ver. 14.2.0.021  Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - NE  P:\CFN.PLV21 FC  TR-6290198  PR-131

# NOTICE OF RIGHT TO CANCEL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $10,500.00 | 07-01-2014 | 07-07-2039 | [redacted] | 32 | [redacted] | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE 68123

**Lender:** BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE 68123-4082
(402) 918-2341

**Grantor:** MARIA J BENNETT
13411 LOCHMOOR CIR
BELLEVUE, NE 68123

## Your Right To Cancel

Lender has agreed to establish an open-end credit account for you, and you have agreed to give Lender a deed of trust on your home as security for the account. You have a legal right under federal law to cancel the account without cost, within three (3) business days from whichever of the following events occurs last:

(A) the date of the opening of your account which is **July 1, 2014**; or

(B) the date you received your Truth in Lending disclosures; or

(C) the date you received this notice of your right to cancel the account.

If you cancel your account, the deed of trust on your home is also cancelled. Within twenty (20) calendar days after Lender receives your notice, Lender must take the steps necessary to reflect the fact that the deed of trust on your home has been cancelled, and Lender must return to you any money or property you have given to Lender or to anyone else in connection with this account.

You may keep any money or property Lender has given you until Lender has done the things mentioned above, but you must then offer to return the money or property Lender has given you. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to Lender's address shown below. If Lender does not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## How to Cancel

If you decide to cancel the account, you may do so by notifying Lender in writing at BANK OF THE WEST, TWIN CREEK, 4009 TWIN CREEK DRIVE, BELLEVUE, NE 68123-4082. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice becau[redacted]ontains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than **midnight of July 5, 2014** or midnight of the third (3rd) business day following the latest of the three (3) events listed above. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_______________ Date

X ______________________ MARIA J BENNETT

## Acknowledgment of Receipt

**I ACKNOWLEDGE THAT I RECEIVED TWO (2) COPIES OF THIS NOTICE OF RIGHT TO CANCEL AND ONE (1) COPY OF THE TRUTH IN LENDING DISCLOSURES.**

7-02-2014
Date

X [signature]
MARIA J BENNETT

**INSTRUCTIONS TO LENDER.** This form is for use in credit transactions involving loans of any amount to individuals for personal, family, or household purposes and SECURED BY AN INTEREST IN THE CONSUMER'S CURRENT PRINCIPAL RESIDENCE, except PURCHASE MONEY LIENS. Two (2) copies of a separate Notice of Right to Cancel form, together with a copy of the Truth in Lending disclosure, must be given to each person who has an ownership interest in the residence, even if the person does not sign the note.

LASER PRO Lending, Ver. 14.2.0.021 Copr. D+H USA Corporation 1997, 2014. All Rights Reserved. - NE P:\CFI\LPL\J30.FC TR-6390198 PR-131

# NOTICE OF RIGHT TO CANCEL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $10,500.00 | 07-01-2014 | 07-07-2039 | ▮▮▮ | 32 | ▮▮▮ | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Grantor: | DANNIE L BENNETT, JR | Lender: | BANK OF THE WEST |
|---|---|---|---|
| | 13411 LOCHMOOR CIR | | TWIN CREEK |
| | BELLEVUE, NE 68123 | | 4009 TWIN CREEK DRIVE |
| | | | BELLEVUE, NE 68123-4082 |
| | | | (402) 918-2341 |

## Your Right To Cancel

Lender has agreed to establish an open-end credit account for you, and you have agreed to give Lender a deed of trust on your home as security for the account. You have a legal right under federal law to cancel the account without cost, within three (3) business days from whichever of the following events occurs last:

    (A) the date of the opening of your account which is **July 1, 2014**; or

    (B) the date you received your Truth in Lending disclosures; or

    (C) the date you received this notice of your right to cancel the account.

If you cancel your account, the deed of trust on your home is also cancelled. Within twenty (20) calendar days after Lender receives your notice, Lender must take the steps necessary to reflect the fact that the deed of trust on your home has been cancelled, and Lender must return to you any money or property you have given to Lender or to anyone else in connection with this account.

You may keep any money or property Lender has given you until Lender has done the things mentioned above, but you must then offer to return the money or property Lender has given you. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to Lender's address shown below. If Lender does not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

## How to Cancel

If you decide to cancel the account, you may do so by notifying Lender in writing at BANK OF THE WEST, TWIN CREEK, 4009 TWIN CREEK DRIVE, BELLEVUE, NE 68123-4082. You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than **midnight of July 8, ▮▮▮▮** midnight of the third (3rd) business day following the latest of the three (3) events listed above. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

    **I WISH TO CANCEL.**

| _____ | x _____ |
|---|---|
| Date | DANNIE L BENNETT, JR |

### Acknowledgment of Receipt

**I ACKNOWLEDGE THAT I RECEIVED TWO (2) COPIES OF THIS NOTICE OF RIGHT TO CANCEL AND ONE (1) COPY OF THE TRUTH IN LENDING DISCLOSURES.**

| 7/2/2014 | x _____ |
|---|---|
| Date | DANNIE L BENNETT, JR |

**INSTRUCTIONS TO LENDER.** This form is for use in credit transactions involving loans of any amount to individuals for personal, family, or household purposes and SECURED BY AN INTEREST IN THE CONSUMER'S CURRENT PRINCIPAL RESIDENCE, except PURCHASE MONEY LIENS. Two (2) copies of a separate Notice of Right to Cancel form, together with a copy of the Truth in Lending disclosure, must be given to each person who has an ownership interest in the residence, even if the person does not sign the note.

LASER PRO Lending, Ver. 14.2.0.021 Copr. D+H USA Corporation 1997, 2014 All Rights Reserved - NE P:\CFR\PL\00 FC TR-6390196 PR-131

# LINE OF CREDIT ADVANCE REQUEST

| Principal | Loan Date | Maturity | Loan No | Call / Coll | [redacted] | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $10,500.00 | 07-01-2014 | 07-07-2039 | [redacted] | 32 | [redacted] | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE 68123

**Lender:** BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE 68123-4082
(402) 918-2341

---

**This LINE OF CREDIT ADVANCE REQUEST is attached to and by this reference is made a part of the Disbursement Request and Authorization, dated July 1, 2014, and executed in connection with a loan or other financial accommodations between BANK OF THE WEST and DANNIE L BENNETT, JR.**

AMOUNT OF ADVANCE $ 0 ____________________

**I authorize Bank of the West to advance from my line of credit the amount indicated above.**

**Please disburse as follows:**

**_____Credit my BOW account #______________________**

**_____Send a check to Branch #________. I will pick up the check.**

**_____Overnight the Check to me at the following address:**

______________________________________
(Company Name if not being sent to home address)

______________________________________
Street address (no P.O. Box)

______________________________________
City, State, Zip Code.

**THIS LINE OF CREDIT ADVANCE REQUEST IS EXECUTED ON JULY 1, 2014.**

**BORROWER:**

X ______________________________________
DANNIE L BENNETT, JR

---

LASER PRO Lending, Ver. 14.2.0.021 Copr. D+H USA Corporation 1997, 2014 All Rights Reserved. - NE P:\CFI\LPL\I20.FC TR-6390196 PR-131

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $10,500.00 | 07-01-2014 | 07-07-2039 | | 32 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  DANNIE L BENNETT, JR
13411 LOCHMOOR CIR
BELLEVUE, NE 68123

**Lender:**  BANK OF THE WEST
TWIN CREEK
4009 TWIN CREEK DRIVE
BELLEVUE, NE 68123-4082
(402) 918-2341

From: Bank of the West*

Subject Property Address: 13411 LOCHMOOR CIR, BELLEVUE, NE 68123

This is to give you notice that BANK OF THE WEST has a business relationship with the settlement services provider(s) listed below. Bank of the West has the following business relationship(s) with:

BW INSURANCE AGENCY, INC.**:  BW Insurance Agency, Inc. is a 100 percent owned subsidiary of the Bank of the West.

Because of this relationship, this referral may provide BANK OF THE WEST a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for settlement of your loan on  the subject property or the purchase, sale, or refinance of the subject property.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES

**Provider and Settlement Service:**
BW INSURANCE AGENCY, INC., Homeowner's Insurance

**Charge or Range of Charges:**
$400 - $10,000

ACKNOWLEDGMENT

I/We have read this disclosure form, and understand that BANK OF THE WEST is referring me/us to purchase the above-described settlement service(s), and may receive a financial or other benefit as the result of this referral.

This disclosure was given to you at the time of application to make you aware that Bank of the West is affiliated with BW Insurance Agency Inc.; we gave you their name to shop for your insurance requirements. We have not shared your personal information with them. Please acknowledge receipt of this disclosure.

\* In South Dakota, Bank of the West does business as Bank of the West California.
\*\* In South Dakota and Arizona, BW Insurance Agency, Inc. does business as BW Insurance Agency, Inc. - California.
In Colorado, BW Insurance Agency, Inc. does business as Colorado - BW Insurance Agency, Inc.

**BORROWER:**

X _____
DANNIE L BENNETT, JR

LASER PRO Lending, Ver. 14.2.0.021 Copr. D+H USA Corporation 1997, 2014.  All Rights Reserved.  - NE  P:\CFI\LPL\G60.FC  TR-63901 98  PR-131



**BMO HARRIS BANK NATIONAL ASSOCIATION**

**Secretary's Certificate of Merger**

I, Gina McBride, Assistant Secretary of BMO Harris Bank National Association, a national banking association organized and existing under the laws of the United States ("BMO Harris Bank"), hereby certify that:

Effective February 2, 2023, Bank of the West, a California State Banking Corporation ("BOTW"), merged with and into BMO Harris Bank with BMO Harris Bank as the surviving institution pursuant to an Agreement and Plan of Merger between BMO Harris Bank and BOTW.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:  February 2, 2023

Name:   Gina McBride
Title:     Assistant Secretary



**BMO BANK NATIONAL ASSOCIATION**

**<u>Secretary's Certificate – Name Change</u>**

I, Cindy Salazar, Assistant Secretary of BMO Bank National Association, a national banking association organized and existing under the laws of the United States, hereby certify that:

Effective September 3, 2023, BMO Harris Bank National Association adopted a Fourth Amended and Restated Articles of Association pursuant to which its corporate title was changed from "BMO Harris Bank National Association" to "BMO Bank National Association."

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated:  September 5, 2023

_____
Name:   Cindy Salazar
Title:     Assistant Secretary

| | |
|---|---|
| COUNTER _PM_ | |
| VERIFY _PM_ | |
| FEES $ _64.00_ | |
| CHG _SFILE_ | |
| SUBMITTED _DRI TITLE & ESCROW_ | |

**FILED SARPY CO. NE.**
**INSTRUMENT NUMBER**

**2014-14862**

2014 Jul 11 11:12:49 AM

*Lloyd J. Dowding*

**REGISTER OF DEEDS**

WHEN RECORDED MAIL TO:
BANK OF THE WEST
CONSUMER PRODUCT SERVICING
P.O. BOX 2492

RETURN TO:
DRI Title & Escrow
13057 W. Center Rd., Ste #1
Omaha, NE 68144

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**MAXIMUM LIEN.**  The lien of this Deed of Trust shall not exceed at any one time $10,500.00.

**THIS DEED OF TRUST** is dated July 1, 2014, among DANNIE L BENNETT, JR and MARIA J BENNETT, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, AND NOT AS TENANTS IN COMMON, whose address is 13411 LOCHMOOR CIR, BELLEVUE, NE 68123 ("Trustor"); BANK OF THE WEST, whose address is TWIN CREEK, 4009 TWIN CREEK DRIVE, BELLEVUE, NE  68123-4082 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and BANK OF THE WEST, whose address is PO BOX 5167, SAN RAMON, CA  94583 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.**  For valuable consideration, Trustor conveys to Trustee in trust, WITH POWER OF SALE, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in** SARPY County, State of Nebraska:

> **LOT 78, TREGARON, A SUBDIVISION, AS SURVEYED, PLATTED AND RECORDED IN SARPY COUNTY, NEBRASKA.**

**The Real Property or its address is commonly known as  13411 LOCHMOOR CIR, BELLEVUE, NE  68123.**

**REVOLVING LINE OF CREDIT.**  This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement.  Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement.  It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND**

Exhibit B

# DEED OF TRUST
## (Continued)

PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**TRUSTOR'S REPRESENTATIONS AND WARRANTIES.** Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

**TRUSTOR'S WAIVERS.** Trustor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Trustor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

  **Duty to Maintain.** Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

  **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

  **Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

  **Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

  **Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

# DEED OF TRUST
## (Continued)

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of Borrower's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds

# DEED OF TRUST
## (Continued)

any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the

# DEED OF TRUST
## (Continued)

net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the Indebtedness when due, terminates the credit line account, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

# DEED OF TRUST
## (Continued)

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen: (A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Borrower's or Trustor's income, assets, liabilities, or any other aspects of Borrower's or Trustor's financial condition. (B) Borrower does not meet the repayment terms of the Credit Agreement. (C) Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

> **Acceleration Upon Default; Additional Remedies.** If any Event of Default occurs as per the terms of the Credit Agreement secured hereby, Lender may declare all Indebtedness secured by this Deed of Trust to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind. Thereafter, Lender may:

>> (a) Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or part of the Property or interest in the Property; increase the income from the Property or protect the security of the Property; and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits of the Property, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection attorneys' fees, to any indebtedness secured by this Deed of Trust, all in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits, and the application thereof shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done in response to such default or pursuant to such notice of default; and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Lender shall be entitled to exercise every right provided for in the Credit Agreement or the Related Documents or by law upon the occurrence of any event of default, including the right to exercise the power of sale;

>> (b) Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver or specifically enforce any of the covenants hereof; and

>> (c) Deliver to Trustee a written declaration of default and demand for sale and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee shall cause to be duly filed for record in the appropriate offices of the County in which the Property is located; and

>> (d) With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Nebraska Uniform Commercial Code.

> **Foreclosure by Power of Sale.** If Lender elects to foreclose by exercise of the Power of Sale herein contained, Lender shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Credit Agreement and such receipts and evidence of expenditures made and secured by this Deed of Trust as Trustee may require.

>> (a) Upon receipt of such notice from Lender, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Notice of Sale as then required by law and by this Deed of Trust. Trustee shall, without demand on Trustor, after such time as may then be required by law and after recordation of such Notice of Default and after Notice of Sale having been given as required by law, sell the Property at the time and place of sale fixed by it in such Notice of Sale, either as a whole, or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including without limitation Trustor, Trustee, or Lender, may purchase at such sale.

>> (b) As may be permitted by law, after deducting all costs, fees and expenses of Trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of (i) all sums expended under the terms of this Deed of Trust or under the terms of the Credit Agreement not then repaid, including but not limited to accrued interest and late charges, (ii) all other sums then secured hereby, and (iii) the remainder, if any, to the person or persons legally entitled thereto.

>> (c) Trustee may in the manner provided by law postpone sale of all or any portion of the Property.

> **Remedies Not Exclusive.** Trustee and Lender, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured by this Deed of Trust and to exercise all rights and powers under this Deed of Trust, under the Credit Agreement, under any of the Related Documents, or under any other

# DEED OF TRUST
## (Continued)

agreement or any laws now or hereafter in force; notwithstanding, some or all of such indebtedness and obligations secured by this Deed of Trust may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained in this Deed of Trust, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other security now or hereafter held by Trustee or Lender, it being agreed that Trustee and Lender, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy conferred upon or reserved to Trustee or Lender, is intended to be exclusive of any other remedy in this Deed of Trust or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given in this Deed of Trust or now or hereafter existing at law or in equity or by statute. Every power or remedy given by the Credit Agreement or any of the Related Documents to Trustee or Lender or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. Nothing in this Deed of Trust shall be construed as prohibiting Lender from seeking a deficiency judgment against the Trustor to the extent such action is permitted by law.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Request for Notice.** Trustor, on behalf of Trustor and Lender, hereby requests that a copy of any Notice of Default and a copy of any Notice of Sale under this Deed of Trust be mailed to them at the addresses set forth in the first paragraph of this Deed of Trust.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of SARPY County, State of Nebraska. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page (or computer system reference) where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by all the beneficiaries under this Deed of Trust or their successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of

## DEED OF TRUST
### (Continued)

this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nebraska without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Nebraska.**

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Nebraska as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means BANK OF THE WEST, and its successors and assigns.

**Borrower.** The word "Borrower" means DANNIE L BENNETT, JR and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated July 1, 2014, **with credit limit of $10,500.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Deed of Trust is July 7, 2039. **NOTICE TO TRUSTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L.

## DEED OF TRUST
### (Continued)

No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means BANK OF THE WEST, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means BANK OF THE WEST, whose address is PO BOX 5167, SAN RAMON, CA 94583 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means DANNIE L BENNETT, JR; and MARIA J BENNETT.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR:

X _____
 DANNIE L BENNETT, JR

X _____
 MARIA J BENNETT

## DEED OF TRUST
### (Continued)

Page **10**

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___NE___ )
                                                            ) SS
COUNTY OF ___Sarpy___ )

On this day before me, the undersigned Notary Public, personally appeared **DANNIE L BENNETT, JR** and **MARIA J BENNETT**, to me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___2nd___ day of ___July___, 20 _14_.

By _____

Printed Name: ___K M Parish___

Notary Public in and for the State of ___NE___

Residing at ___4009 Twin Creek Dr, Bellevue___

My commission expires ___9-3-2014___

K M PARISH
General Notary
State of Nebraska
My Commission Expires Sep 3, 2014

---

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____     Beneficiary: _____
                                                          By: _____
                                                          Its: _____

LASER PRO Lending, Ver. 14.2.0.021  Copr. D+H USA Corporation 1997, 2014.   All Rights Reserved.   - NE
P:\CFI\LPL\G01.FC  TR-6390196  PR-131